STATE ex rel. Sam COATES et al., Respondents,

v.

Leftwich PARCHMAN, Alphonse J. Lynch and Robert L. Witherspoon, Appellants.

No. 48502.

Supreme Court of Missouri,

Division No. 2.

May 8, 1961.

R. L. Witherspoon, Alphonse J. Lynch, St. Louis, for appellants.

John Grossman, St. Louis, for respondents.

BARRETT, Commissioner.

The relators are the pastor, members of the board of deacons and the board of trustees of the St. Bethel Missionary Baptist Church. The appellant, Leftwich Parchman, is a former member of the board of trustees and a defendant in one or more suits pending in the circuit court and the St. Louis Court of Appeals in which the relators are plaintiffs. The other appellants, Witherspoon and Lynch, are counsel for Parchman. In this particular phase of the litigation, alleging that they have violated an injunction issued in one of the principal suits, the relators have cited Parchman and his counsel for contempt: "If any person disobey or violate an injunction after it is served on him, the circuit court to which it is returned, or any judge thereof in vacation, shall issue an attachment against him for a contempt; and unless he shall disprove or purge the contempt, if in vacation, the judge may commit him to jail until the sitting of the court in which the injunction is pending, or take bail for his appearance in said court at the next term thereof, to answer for the contempt, and abide the order of the court, and in the meantime to observe and obey the injunction." V.A.M.S. § 526.220.

The background of this proceeding and of the litigation in general is that in a condemnation suit the Land Clearance Authority of St. Louis after condemning the church property paid the award of $36,000 into the registry of the circuit court. The pastor and church officers filed an application to "take down" the full amount of the award, Parchman and others filed objections to the application and, for some reason, that application was denied. At a later date an application to take down a lesser sum was filed, resisted, and denied. But, the relators allege in this proceeding, that in one of its decrees the circuit court "permanently enjoined and restrained (Parchman) from in any manner usurping the rights, powers and duties of the plaintiffs as officers of said church, and from disturbing, interfering with, or harassing the plaintiffs in the performance of their duties as officers, deacons, etc.; * * *." Finally, in January 1960, the circuit court sustained a third petition for partial distribution of the fund and an order was entered permitting the relators to withdraw $5,000 of the fund from the registry of the court. Before the check was issued, however, Parchman, through his counsel, filed a motion to set aside the order of partial distribution. The relators say that this action on the part of Parchman and his counsel has delayed the partial distribution, prevented them from obtaining suitable quarters for church services and that Parchman and his counsel in resisting the application and order "in-

tended to harass the plaintiffs in the proper performance of their duties" and that their conduct was "in direct and flagrant violation and contempt of this Court's decree."

At the conclusion of a rather extensive hearing on the citation, the court indicated that the appellants had violated the injunction and were therefore guilty of contempt within the meaning of the statute, apparently. But the court announced that the matter should be passed until the following day so the appellants "can decide * * * whether you want to purge yourselves · by withdrawing that motion to set aside, or whether you want to leave it up to me to determine what should be the judgment of the Court." On February 15th the court of its own motion examined Parchman further concerning the filing of the motion but again reserved his ruling. When the court again sat three days later, the judge announced that it had been brought to his attention that on the 16th of February "there was filed * * * a memorandum withdrawing the then pending motion to set aside a previous order of the Court," and the court construed that action as "an effort to purge of contempt."

·· Nevertheless, an extended colloquy between court and counsel followed and finally the court said, "I don't think you fully purge yourselves, gentlemen, that means Parchman, Witherspoon and Lynch, all three defendant-respondents, I don't think you purge yourselves until you pay these costs, and we will determine the matter." After further lengthy discussion the court "hit (on) the round figure" of $206.65 and announced that when the appellants paid that part of the costs "and only then would I be able to say, that you have fully purged yourselves of contempt by assuming the obligation that you have created." There was further colloquy in which counsel inquired, "I would like to know if what his Honor has said constitutes your Honor's findings, or order, or just what it is." Counsel wanted to see the court's order and "confer with our client." In response

the court announced that he found them guilty of contempt but "I am going to let you be free of further punishment" upon payment of the costs. Counsel consulted with their client and then asked the court "to stay the execution * * * to consider the matter and talk to our client in detail." There was further colloquy, the court demanding under threat of commitment immediate payment of the costs. Finally the judge committed the appellants to the custody of a deputy sheriff while he dictated a commitment. It was announced after a recess that one of Parchman's counsel preferred to pay the costs and after further colloquy it was stated that the other lawyer "acquiesces with me in what I have done with reference to the costs." Whereupon, the court announced that the parties were excused and that there would be a temporary recess. The court then entered this "memorandum," "Court finds 3 .respondents guilty of contempt of Court; upon respondents paying all court costs incident to this proceeding and previous citations for contempt, which is done, Court administers reprimand and defendants are discharged."

The appellants immediately filed a motion "for a stay of execution" in which it was stated that they desired to file a motion for a new trial and a rehearing. Eight days later the appellants filed a lengthy motion for a new trial. Among the assignments with which this court is concerned were these: "8. The Judge who tried said Citation had no venue or jurisdiction to try the same, and thereby defendants were denied procedural due process of law," and "13. That the judgment and order of the Court and the entire proceedings herein had were in violation of constitutional rights of the Defendants as guaranteed under Article 1, Section 10 of the Constitution of Missouri, 1945 [V.A.M.S.], which states that no person shall be deprived of life, liberty or property without due process of law; and in violation of the rights of the defendants as guaranteed under Section 1 of Article 14 of the Constitution of the

United States *by reasons that:* * * *." Then in detail the appellants set forth seven "reasons" or respects in which the judgment infringes their constitutional rights: (1) "That the hearing was conducted in a manner of unfairness to the defendants in that the Court appeared and acted to give considerable weight to pleadings contained in plaintiffs' petition prior to the presentation of evidence, hence depriving defendants of the process of a fair trial," (2) that throughout the hearing the court indicated that "the Verdict" should be in favor of the plaintiffs, (3) that the court unduly limited their cross-examination of witnesses, (4) unduly restricted appellants in presenting evidence, (5) that Parchman was ordered to withdraw from the main cause even though he was in fact a named defendant, (6) that Parchman was ordered "to relieve" himself of counsel and (7) that Witherspoon and Lynch were ordered to refrain from acting as counsel for Parchman in the principal case.

The court, on its own initiative, struck the appellants' motion for a new trial from the files. In an attached memorandum the court stated that the defendants had indicated that "they desired to terminate the proceeding," that one of them had "paid court costs in a substantial amount" in an endeavor to purge the defendants of contempt, accordingly the court "merely administered a reprimand and the respondents were discharged," the court was of the opinion that "these matters" brought the contempt citation to a close, consequently there was nothing on which a new trial could be had and, since the motion could no longer serve any function, it was stricken from the files. Whereupon the defendants filed and lodged a notice of appeal in this court "from the Judgment (Contempt) entered in this action on the 18th day of February, 1960."

It is asserted in their jurisdictional statement that this court has jurisdiction of the appeal because "the procedures of trial commitment, arbitrary assessments of costs, and the findings, orders and judgment of the trial Court were violative of the rights of the appellants as guaranteed" by Article 1, Section 10 of the Constitution of Missouri and the Fourteenth Amendment to the Constitution of the United States and that "such violations occurred in the following manner: * * *." The appellants then enumerate in detail and in substance the seven reasons or respects set forth in their motion for a new trial, adding to the list the court's striking their motion for a new trial from the files. The appellants brief four points, the third one being that "The judgment, order and entire proceedings were a denial of due process of law and in violation of the Appellants' constitutional rights." In the argument portion of their brief they say that due process was denied and their constitutional rights infringed in that (1) the court committed them to the custody of the sheriff, "This deprived them of their liberty," (2) the court committed them to the custody of the sheriff for failure to pay costs and this "was an imprisonment for debt," and (3) the court arbitrarily assessed the costs against them and this was "a deprivation of property without due process." The respondent-relators contend that this is not a case "involving the construction of the Constitution of the United States or of this state" (Const.Mo., Art. 5, Sec. 3) and that therefore this court does not have jurisdiction of the appeal.

 It will be observed that the appellants do not attack or claim that the statute under which they were cited (V.A.M.S. § 526.220) is unconstitutional. State v. Hatton, 240 Mo.App. 1244, 228 S.W.2d 10. They do not claim that they were not given a hearing or that the court predetermined their case and thus infringed due process (Compare Ex parte Nelson, 251 Mo. 63, 157 S.W. 794), their complaints are all directed to the manner in which the hearing was conducted and ultimately to what the court as a matter of fact finally did. The mere insertion in a motion for a new trial of the conclusional statement that a constitutional question is involved is a mere matter of

form and does not present a jurisdictional constitutional question, the constitutional question must in fact exist and if it does not exist, it is neither presented nor involved. Yeomans v. Herrick, 178 Mo.App. 274, 278, 165 S.W. 1112, 1113. It may be in some instances that a constitutional question may be raised for the first time in a motion for a new trial (Mesenbrink v. Boudreau, Mo.App., 171 S.W.2d 728, 730) but both the motion for a new trial and the brief must set forth the facts "which create the conflict" and constitutional infringement. Village of Grandview of Jackson County v. McElroy, 318 Mo. 135, 298 S.W. 760; Robinson v. Nick, 345 Mo. 305, 134 S.W.2d 112. The seven or eight "reasons" or respects in which the appellants assert that the court infringed their rights may be sufficiently specific in particularizing (City of Higginsville, etc. v. Alton R. Co., 237 Mo.App. 1204, 1220, 171 S.W.2d 795, 804) but they do not factually hypothesize or demonstrate an invasion of constitutional rights, they are all allegations or claim that the judgment is erroneous for one reason or another, procedurally or as a matter of law and fact. Nelson v. Watkinson, Mo., 260 S.W.2d 1; Stegall v. American Pigment & Chemical Co., 263 Mo. 719, 173 S.W. 674. The appellants may have been committed to the temporary custody of a deputy sheriff but they have not been committed "to jail" (V.A.M.S. § 526.220) and there is no order committing them. The court's "memorandum" recites that they were found guilty of contempt, reprimanded, required to pay the costs and "discharged." The propriety and correctness of the finding of guilt, the assessment of costs, the reprimand, and the court's striking the motion for a new trial from the files all present problems of whether the court erred in matters of law and fact or in practice and procedure, but they do not raise questions involving the construction of the constitution. Woody v. St. Louis & S. F. Ry. Co., 173 Mo. 547, 550, 73 S.W. 475, 476; Finley v. Finley, Mo., 165 S.W.2d 417. The courts of appeal have general jurisdiction of citations for contempt for violation of injunc-

tions. St. Louis Sanitary Landfill Co. v. Scott, Mo.App., 274 S.W.2d 585; G——— v. Souder, Mo.App., 305 S.W.2d 883; Bauer v. City of Berkeley, Mo., 278 S.W.2d 772. As indicated, this appeal does not involve the construction of the constitution or an infringement of the appellants' constitutional rights in the appellate jurisdictional sense and accordingly the cause is transferred to the St. Louis Court of Appeals. Const. Mo., Art. 5, Sec. 11.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.